IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:15CV00534 AGF |
| | ) | |
| IAN WALLACE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the petition of Missouri state prisoner Brian Williams for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, federal habeas relief will be denied.

## BACKGROUND

On February 27, 2009, Petitioner pled guilty in Missouri state court to charges in two separate cases: In Case No. 07SL-CR04300-01 (hereinafter, "CR04300-01"), Petitioner pled guilty to one count of second-degree murder (Count I), one related count of armed criminal action ("ACA") (Count II), three counts of first-degree assault (Counts III, V, and VII), and three counts, respectively, of ACA (IV, VI, and VIII). All charges arose out of the August 25, 2007 shooting death of one victim and the shooting of three other victims in the same gang-related shooting spree. In exchange for his guilty plea, the prosecutor had amended Count I from first-degree murder to second-degree murder, and also amended Count II, accordingly. In Case No. 08SL-CR03262-01 (hereinafter, "CR03262-01"), Petitioner pled

guilty to three counts of first-degree robbery and three counts of ACA. These crimes involved three different victims and were unrelated to the crimes charged in CR4300-01.

At the guilty plea and sentencing hearing, Petitioner confirmed that he had sufficient time to discuss the case with his attorney, and that he understood the rights he was giving up by pleading guilty. The prosecutor outlined a factual basis for the pleas and Petitioner affirmed that the facts as set forth by the prosecutor were true. The prosecutor then reviewed the range of punishment for each crime, as follows: "The range of punishment . . . for the murder in the second degree was 10 to 30 years or life imprisonment. Regarding assault in the first degree those also contain the range of punishment of 10 to 30 years. And the armed criminal action is a minimum of three years with a maximum of life imprisonment." ECF No. 12-3 at 50. The prosecutor explained that the State's recommended punishment as to CR04300-01 was life imprisonment on Count I, a concurrent term of life on Count II, and 25 years on each of Counts III-VIII to be served concurrent to one another, but consecutive to the life sentences on Counts I and II, for "a total of life plus 25 years." As to CR03262-01, the prosecutor stated that the recommended sentences of 20 years on each count "would run concurrent to one another and concurrent to the life sentences that the Court will be imposing [in CR04300-01]." *Id*. at 51.

Petitioner confirmed that the prosecutor's recitation matched his "understanding of what the State recommended in both of [his] cases." *Id*. Petitioner then pled guilty to all of the charged offenses and the court accepted the pleas as voluntarily and intelligently made with a full understanding of the charges and consequences of the pleas. Consistent with the parties' recommendations, the court sentenced Petitioner in CR04300-01 to life imprisonment

2

for murder in the second degree; life imprisonment for the related ACA; and 25 years for each count of assault in the first degree and each remaining count of ACA. The court ordered the sentences on Counts I and II to run concurrently with each other, and the remaining sentences to run concurrently with each other, but consecutively to Counts I and II.

The court sentenced Petitioner in CR03262-01 to 20 years for each count and ordered the sentences to run concurrently with all of the other sentences. After sentencing, Petitioner expressed satisfaction with counsel's representation and stated that the sentences imposed were the result of a plea bargain. *Id*. at 53.

**State Post-Conviction Proceedings**

The only claim Petitioner raised in his amended motion for postconviction relief was that his plea was involuntary and "must be withdrawn" because plea counsel failed to explain the "details and consequences of the life sentence and consecutive time." ECF No. 12-3 at 78. He asserted that his plea counsel did not "explain what a life sentence for murder meant," but rather "told him that life meant thirty years and he would be eligible for parole after a certain number of years, [and that Petitioner] did not understand that he would be forced to serve more than thirty years at the most." Petitioner alleged that he did not know that he would be subject to § 558.019.3, Mo. Rev. Stat.,1 pursuant to which he would have to serve

---

1   Section § 558.019.3 provides as follows:

   [A]ny offender who has pleaded guilty to or has been found guilty of a dangerous felony as defined in section 556.061 and is committed to the department of corrections shall be required to serve a minimum prison term of eighty-five percent of the sentence imposed by the court or until the offender attains seventy years of age, and has served at least forty percent of the sentence imposed, whichever occurs first.

85 percent of the life sentence and 85% percent of the 25 year sentences, for a total of 46 and ¾ years before being eligible for parole. Petitioner alleged that had he known he would have to serve "this extended amount of time," he would not have pled guilty, and would have insisted upon a trial. In sum, Petitioner claimed that plea counsel actions in "misadvising him about the amount of time [Petitioner] would have to serve before becoming eligible for parole" deprived him of his constitutional right to effective assistance of counsel. *Id*. at 80.

The motion court denied Petitioner's request for an evidentiary hearing and rejected this claim. The court held that parole eligibility is a collateral consequence of a guilty plea and, under although under Missouri law, plea counsel and the trial court have "a duty not to affirmatively *misinform* [a defendant] of the consequences of his plea," there was "no evidence of affirmative misinformation in this case." *Id*. at 93-94.

In affirming the motion court's decision, the Missouri Court of Appeals held that the motion court's finding that counsel was not obligated to advise Petitioner about parole eligibility, a collateral consequence of pleading guilty, was not clearly erroneous. ECF No. 12-4 at 7. The appellate court cited § 558.019, and reasoned as follows:

> [E]ven if counsel advised Movant in terms of the "number of years" he should expect to serve for murder, the allegation in Movant's amended motion did not show that counsel misinformed Movant about parole eligibility on his life sentence for murder. Moreover, the record shows that Movant was aware that he would receive additional sentences of twenty-five years, and that those sentences would run consecutively to his life sentences, meaning that his total sentence would be "life plus 25 years." At his plea

---

Subsection 4 provides that for the purpose of determining the minimum prison term to be served, "A sentence of life shall be calculated to be thirty years."

4

> hearing, Movant assured the court that he understood the terms of the plea agreement and he did not allege in his amended motion that counsel misadvised him about the meaning of consecutive sentences or the length of time he would have to serve before being eligible for parole on all of his sentences.

*Id*.

**Federal Habeas Claims**

In his first claim for federal habeas relief, Petitioner again asserts that his plea counsel was ineffective for failing to explain to him the details and consequences of the life sentence and consecutive time in CR04300-01. Petitioner asserts that if plea counsel had told him that he would have to serve more than the 30 years required for a life sentence before becoming eligible for parole, he would have opted to go to trial rather than pleading guilty.

In his second, third, and fourth claims, Petitioner asserts that his post-conviction counsel was ineffective for failing to raise in the amended motion for post-conviction relief the claims that plea counsel was ineffective for allowing Petitioner to plead guilty to the eight counts in CR04300-01, as such pleas were in violation of the Double Jeopardy Clause because all the charges arose from a single continuing course of conduct and consisted of the same elements. In his fifth and last claim, Petitioner faults post-conviction counsel for not raising plea counsel's ineffectiveness in not arguing to the sentencing court that imposing sentences on all the counts in both cases violated Petitioner's double jeopardy rights. For relief, Petitioner asks for a "new sentencing proceeding so that Petitioner can be properly sentenced to what he understood he would be sentenced to." ECF No. 1 at 18.

Respondent argues that habeas relief should be denied because the state courts reasonably adjudicated Petitioner's first claim; and Petitioner procedurally defaulted the remaining claims, and in any event, these double jeopardy claims are without merit.

## **DISCUSSION**

### **Plea Counsel's Advice Regarding Parole Eligibility**

Where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that application for a writ of habeas corpus cannot be granted unless the state court's adjudication:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

> "[C]learly established Federal law" for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions. And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (citations omitted); *see also Kernan v. Cuero*, 138 S. Ct. 4, 9 (2017) ("[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In the context of a guilty

plea, a defendant who pleaded guilty upon the advice of counsel may challenge the voluntariness of that plea through a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985). "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id*. "Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id*. (citation omitted); *see also Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) (holding that plea counsel rendered deficient performance by failing to advise the defendant that his plea of guilty made him subject to automatic deportation).

To show ineffective assistance of counsel, a habeas petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To establish prejudice in the context of a guilty plea, a habeas petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

When, as here, an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *See Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citation omitted). It is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S.

7

685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id*. at 699.

Here, the Court is bound by the Eighth Circuit's decision in *Plunk v. Hobbs*, 766 F.3d 760 (8th Cir. 2014), to conclude that Petitioner's claim must be rejected. In *Plunk*, the habeas petitioner asserted that plea counsel was ineffective by not advising him "accurately" about when he would be eligible for parole. The Eighth Circuit held that although some state courts "have extended the reasoning of the Supreme Court's decision in *Padilla v. Kentucky,* 559 U.S. 356, 369 (2010)—concerning advice about deportation consequences—to require advice about parole eligibility, any such extension of the Sixth Amendment would be a new rule of constitutional law, inapplicable on collateral review," *Plunk*, 766 F.3d at 769 (citations omitted). *Plunk* comports with the Supreme Court's pronouncement in *Padilla* that the Court did not have to consider whether, in general, there was "a distinction between direct and collateral consequences [of a guilty plea] to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland* . . . because of the unique nature of deportation." *Padilla*, 559 U.S. at 365.

Furthermore, upon review of the record, although the better practice would have been to hold an evidentiary hearing on the matter, this Court cannot say that the state courts' determination that Petitioner did not assert that plea counsel affirmatively misadvised him about parole eligibility was legally or factually unreasonable. Petitioner's first claim for federal habeas relief is rejected.

**Defaulted Claims**

As Respondent argues, the doctrine of procedural default precludes consideration by

8

this Court of the ineffective assistance/double jeopardy claims because Petitioner did not present them to the state courts, and the record shows no excuse for this default. The ineffective assistance of post-conviction counsel can excuse a procedural default, but only if the underlying claim is "substantial" and has "some merit," *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012), and here the double jeopardy claims are devoid of any merit. Because the second-degree murder charge and assault charges in CR04300-01 arose from incidents involving different victims, these counts are not cumulative and, as such, do not implicate double jeopardy. As for the three ACA charges in that case, the United States Supreme Court has rejected the assertion that a Missouri court violates the Double Jeopardy Clause by punishing a convicted criminal both for an underlying offense and for ACA in using a weapon in the commission of the offense. *See Missouri v. Hunter*, 459 U.S. 359, 365-369 (1983); *see also Jones-El v. Wallace*, No. 4:13-CV-85-SPM, 2016 WL 1258632, at *6 (E.D. Mo. Mar. 31, 2016) (holding that neither the Double Jeopardy Clause nor Missouri's cumulative punishment statute precluded convictions and sentences for robbery in the first degree and ACA in committing the robbery). The same reasoning applies to the charges in CR03262-01. Thus, Claims II thru V are rejected.

## **CONCLUSION**

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of Petitioner's claims for habeas relief debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2). *See Miller-El v. Cockrell,* 537 U.S. 322, 338 (2003) (standard for issuing a Certificate of Appealability) (quoting *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Brian Williams for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not be issued in this case.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 29th day of December, 2017